NICHOLAS J. BEGAKIS (SBN 253588)
nicholas.begakis@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: +1 310 203 4000
Facsimile: +1 310 229 1285

Attorneys for Third-Party Subpoena Respondent
TIKTOK INC.

NIMA GHARAVI
nima@midwestwrestle.com
4610 North Clark Street, St. 1098
Chicago, Illinois 60640

Plaintiff *Pro Se*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIMA GHARAVI,<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK INC., TIKTOK LTD., TIKTOK PTE. LTD., and TIKTOK U.S. DATA SECURITY INC.,<br><br>Third-Party Subpoena Respondents. | Case No. 2:25-mc-00002-HDV-PD<br><br>**TIKTOK INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS REQUEST FOR ENTRY OF A PROTECTIVE ORDER**<br><br>Date: May 22, 2025<br>Time: 10:00 a.m.<br>Hon.: Judge Henan D. Vera<br>Discovery Cut-Off: N/A<br>Pretrial Conference: N/A<br>Trial Date: N/A |

Pro se Plaintiff's response to TikTok Inc.'s ("TTI") request for entry of a protective order overcomplicates a straightforward issue: should production of basic subscriber information ("BSI") for unidentified non-parties be subject to a protective order. As TTI's memorandum showed, courts often do this. TTI's counsel made clear during its initial discussion with Plaintiff that it will produce responsive BSI subject to a protective order. Plaintiff responds with unavailing or irrelevant arguments.

At the outset, Plaintiff contends TTI has delayed this process. That is incorrect. TTI's outside counsel has worked to meet with Plaintiff and address his concerns. TTI disagreeing with Plaintiff's position is not delay, just as Plaintiff's refusal to accept TTI's position is not delay. The parties simply disagree. That said, this matter would already be resolved—and Plaintiff would be on his way to pursuing his claims—had he done what parties do all the time and stipulated to a protective order.

None of Plaintiff's arguments change that central fact. First, he contends that case law supports his position. But as explained below, he misreads the cases, which show courts often enter protective orders in circumstances such as these. Second, he incorrectly contends the DMCA provides the same protections as the protective order, making a protective order unnecessary. That not only misreads the DMCA, but it also conflicts with his other argument that the protective order will somehow limit his ability to pursue his claims. Plaintiff's remaining arguments are either unfounded or irrelevant.

Because Plaintiff's arguments lack merit, TTI requests that this Court grant its request to enter a protective order.

**1.    Plaintiff's Legal Arguments Are Without Merit.**

TTI's opening memorandum cited decisions where courts entered protective orders under similar circumstances. Many of these federal courts recognized the benefit of reasonably safeguarding the interests of unknown individuals with no ability to object, identify unknown issues, or assert their positions. *See* Doc. 7-1 at 4. Plaintiff's arguments can be summarized as: (1) attempting to distinguish aspects of

TTI's citations, but none of the distinguishing factors, even if true, should impact this Court's analysis or decision; (2) citing cases discussing protective orders in other contexts, which are unrelated to TTI's arguments here; and (3) confusing decisions for motions to quash with requests for a protective order before production.

First, Plaintiff identifies that some cases cited by TTI involve "sensitive or stigmatizing" adult content. *Id.* at 10-11. Plaintiff admits this argument only applies to some cases, and he cites no authority supporting an argument that a protective order should somehow only be entered when BSI relates to adult content. *Id.* at 13. Notably, among others, this Court's analysis in *Mintz v. Mark Bartelstein & Associates, Inc.*, 885 F.Supp.2d 987 (C.D. Cal. Aug. 14, 2012) and decisions such as *After II Movie, LLC v. Grande Communications Networks LLC*, No. 1:21-cv-00709, 2023 WL 3094122, at *2 (W.D. Tex. Apr. 26, 2023) granted protective orders under similar facts without any concern for whether the underlying allegations involved adult content or analogous stigmatizing content. Thus, this argument should have no bearing on the Court's analysis.

Second, Plaintiff argues protective orders for BSI were only entered in cases involving mass litigants. This is not supported by TTI's citations or applicable law. For example, neither *Mintz* nor *After II Movie* analyzed whether other cases were filed by plaintiffs. *Mitz*, 885 F.Supp.2d at 987; *After II Movie*, 2023 WL 3094122. Further, Plaintiff provides no citation for an argument that courts should only enter protective orders when a plaintiff files multiple cases or that this is a factor courts should consider. While this argument has no basis in law, TTI notes Plaintiff's memorandum states he has pursued at least 52 DMCA notices, provides examples of other cases he filed, and he is currently requesting information for 22 accounts. *See* Doc. 7-1 at 20, 23. Thus, while the Court should not consider this argument, Plaintiff's conduct appears consistent with the mass litigants he identified.

Third, Plaintiff argues issuing counsel in some cases did not oppose a protective order. While this is consistent with TTI's experience in similar

circumstances, it in no way diminishes the fact that those courts analyzed this topic and ultimately entered protective orders.

Fourth, Plaintiff argues TTI's citations only apply to internet service providers and arguments under 47 U.S.C. § 551(c). Plaintiff discusses standards for production of certain information by internet service providers, but there is no indication this language somehow impacts whether protective orders may be entered for production of BSI in other contexts. Further, Plaintiff's assertion that all TTI's citations fit this category is wrong. For example, the court in *Mintz v. Mark Bartelstein & Associates*, 885 F.Supp.2d 987 (C.D. Cal. 2012) did not conduct an analysis under 47 U.S.C. § 551(c), stated BSI may be produced to civil litigants, and ordered the parties to submit a protective order before BSI was produced. *Id.* at 1000.[1]

Fifth, Plaintiff's argument regarding the length of TTI's proposed protective order is irrelevant. TTI's proposal is modeled on standard protective orders from federal courts, and TTI attempted to negotiate the protective order with Plaintiff, but he refused. While this argument should not impact the Court's analysis, TTI's proposal is notably shorter than a standard protective order provided by judges in this Court,[2] and Plaintiff's briefing identifies a protective order that was eight-pages longer. Doc. 7-1 at 14. This argument has no merit.

Plaintiff's argument that a protective order for a BSI production is always improper relies on cases analyzing motions to *quash*, and avoid productions altogether, or suppress evidence in a criminal case—not production subject to a protective order in a civil action. Plaintiff cites three orders from the same case, *Smythe v. Does 1-10*, No. 15-4801 (C.D. Cal.), which merely required production of BSI, but did not consider a request for a protective order. Doc. 7-1 at 18-19. *United States v. Rosenow*, 50 F.4th 715 (9th Cir. 2022) considered whether evidence seized

---

[1] *See also Strike 3 Holdings, LLC v. Doe*, 2018 WL 10604533 (N.D. Cal. Sept. 14, 2018) (no analysis under Section 551); *Strike 3 Holdings, LLC v. Doe*, No. 4:22-cv-879, 2023 WL 4922590, at *3 (E.D. Tex. Aug. 1, 2023) (same).
[2] *See* https://www.cacd.uscourts.gov/sites/default/files/documents/JDE/AD/Stipulated%20 Protective%20Order.pdf%20rev%202.16.18.pdf (last visited May 6, 2025).

from electronic devices should be suppressed at a criminal trial, when the information was obtained without a warrant and allegedly in violation of a defendant's Fourth Amendment rights. Plaintiff's citation to *Strike 3 Holdings, LLC v. Doe*, No. 4:22-cv-887, 2022 WL 17350445, at *3 (E.D. Tex. Nov. 30, 2022) is misplaced, as his quotation stops immediately before a sentence putting the quotation in context and stating the court did enter a protective order for the BSI production. Doc. 7-1 at 19.

TTI has already agreed to produce responsive BSI and will produce it in short order. It is not moving to quash the subpoena or limit Plaintiff's ability to rely on BSI in arguing his claims. Thus, these decisions are readily distinguishable. Further, Plaintiff's position is not compatible with cases cited in TTI's opening memorandum, where courts entered protective orders under similar circumstances. *Id.* at 4.

**2.      Plaintiff's Remaining Arguments Are Unfounded or Irrelevant.**

Plaintiff's memorandum provides many arguments spanning numerous pages with no relation to whether BSI for these unknown individuals should be produced subject to a protective order. TTI briefly addresses each of these arguments below.

First, TTI is not seeking an advisory opinion. *See* Doc. 7-1 at 15-17. It is requesting that the Court enter a protective order, consistent with its actions in many jurisdictions, where courts entered protective orders under similar circumstances.

Second, Plaintiff makes an out-of-context citation to TTI's guidelines for law enforcement requests for user data. *Id.* at 17. This is not a law enforcement request, the process is irrelevant, and owners of the 22 accounts are unknown to the Parties.

Third, Plaintiff argues a protective order is unnecessary, as he can only use BSI to protect his copyrights. *Id.* at 18. But while the Digital Millennium Copyright Act ("DMCA") limits the *purpose* for which Plaintiff can use the information, it does not limit the *means* by which Plaintiff may accomplish that purpose or how the information may be disclosed. Thus, a protective order is not duplicative of the DMCA, and Plaintiff's position here contradicts many of his other arguments. For

example, he does not explain why a protective order would increase his burden if it was duplicative of the DMCA. *See id.* at 20-21.

Fourth, Plaintiff's burden arguments are unfounded. *See id.* at 22. TTI has used similar protective orders for BSI productions in response to many subpoenas. No party has reported difficulty enforcing their rights, and every applicable court has entered the protective order. Plaintiff raises the burden of filing under seal, but such provisions are part of nearly all protective orders, including the model documents provided by this Court. TTI also asked Plaintiff for his edits to the protective order, but he refused to negotiate.

Fifth, Plaintiff again cites decisions for motions to *quash* subpoenas in his argument that precedent favors DMCA enforcement without protective orders. These decisions analyze whether the information must be produced, not whether a protective order is proper for BSI productions.[3] Plaintiff also argues there is a lack of DMCA cases entering protective orders. Courts, however, have entered protective orders in DMCA cases,[4] and Plaintiff provides no valid reasoning for why a protective order for BSI should be treated differently in a DMCA case.

Finally, Plaintiff's arguments regarding dilatory tactics disregards a common practice in third-party discovery. Plaintiff and TTI simply disagree about the need for a protective order. TTI has attempted to assuage Plaintiff's concerns and work with him to find a solution that provides basic protection for its users and allows Plaintiff to pursue his claims. Plaintiff has not responded in kind.

## 3. CONCLUSION

For the foregoing reasons, TikTok Inc. respectfully requests that the Court enter the proposed Protective Order before production of BSI.

---

[3] *See In re DMCA Subpoena to eBay, Inc.*, No. 15-cv-922, 2015 WL 3555270, at *4 (S.D. Cal. June 5, 2015); *Cognosphere Pte. Ltd. v. X Corp.*, No. 23-cv-80294, 2024 WL 4227594, at *9 (N.D. Cal. Sept. 18, 2024); *Baugher v. GoDaddy.com LLC*, No. 19-00034, 2021 WL 4942658 (D. Ariz. Oct. 22, 2021).

[4] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, 337 F.Supp.3d 246 (W.D.N.Y. 2018); *Strike 3 Holdings*, 2018 WL 2078707, at *4; *Strike 3 Holdings, LLC v. Doe*, No. 18-774, 2018 WL 4210202 (D. Minn. Sept. 4, 2018).

| | | |
|---|---|---|
| Dated: | May 8, 2025 | FAEGRE DRINKER BIDDLE & REATH LLP |
| | | By:/s/ *Nicholas J. Begakis* |
| | | Nicholas J. Begakis |
| | | Attorneys for Third-Party Subpoena Respondent TIKTOK INC. |

## CERTIFICATE OF SERVICE

The undersigned certifies the foregoing document was filed on the Court's CM/ECF system, which provided notice to all parties.

*/s/ Nicholas J. Begakis*
Nicholas J. Begakis