NIMA GHARAVI
dmca@midwestwrestle.com
4610 North Clark St. #1098
Chicago, IL 60640
+1 (773) 899-4688

Plaintiff *Pro Se*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE DIGITAL MILLENNIUM COPYRIGHT ACT SECTION 512(h) SUBPOENA TO TIKTOK INC., TIKTOK LTD., TIKTOK PTE. LTD., AND TIKTOK U.S. DATA SECURITY INC. | Case No.: 2:25−mc−00002 HDV (PDx)<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO TTI'S MOTION FOR ENTRY OF PROTECTIVE ORDER**<br><br>**Date:** Thursday, May 22, 2025<br>**Time:** 10:00 a.m.<br>**Courtroom:** 5B, 5th Floor<br>**Judge:** Hon. Hernán D. Vera<br>**Location:** First Street Courthouse, 350 W. 1st Street, Los Angeles, CA 90012 |

1

PLAINTIFF'S SUPPLEMENTAL MEMO OF LAW IN OPPOSITION TO TTI'S MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:25−mc−00002 HDV (PDx)

TikTok Inc.'s ("TTI") supplemental memorandum fails to establish good cause for a protective order and repeatedly mischaracterizes both the record and Plaintiff's arguments. TTI's supplemental memorandum relies on misrepresentations, inapposite case law, and contradictory positions that undermine rather than support its request. As detailed below, TTI's arguments for a protective order are meritless and its request should be denied.

**1. TTI Misrepresents Plaintiff's Arguments While Failing to Establish Good Cause**

Throughout its supplemental memorandum, TTI engages in a pattern of mischaracterizing Plaintiff's arguments. For example, TTI claims "Plaintiff provides no citation for an argument that courts should only enter protective orders when a plaintiff files multiple cases"[1] when Plaintiff explicitly cited *Strike 3 Holdings, LLC v. Doe*, No. 18-CV-02019-YGR-EDL, 2018 WL 10604533 at *1 (N.D. Cal. Sept. 14, 2018), which notes: "Over the last two years, Plaintiff has filed dozens of copyright infringement cases in this District [alone], all of which are initiated with virtually identical complaints." Dkt. 7-1 at 11.

TTI's assertion that "Plaintiff identifies that *some* cases cited by TTI involve 'sensitive or stigmatizing' adult content"[2] (emphasis added) distorts Plaintiff's actual statement that "all but one of the six cases (*After II Movie*) involves content of a sensitive and stigmatizing nature." *Id.* at 10. This mischaracterization transforms Plaintiff's argument that 83% of TTI's cited cases involved sensitive content into a much weaker admission.

Most egregiously, TTI attributes to Plaintiff an "argument that a protective order for a BSI production is always improper"[3] without any citation, because Plaintiff never made such an assertion. Similarly, TTI claims Plaintiff "argues there is a lack of *DMCA*

---

[1] Dkt. 15 at 3.
[2] *Id.*
[3] *Id.* at 4

2

PLAINTIFF'S SUPPLEMENTAL MEMO OF LAW IN OPPOSITION TO TTI'S MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:25−mc−00002 HDV (PDx)

*cases* entering protective orders"[4] (emphasis added) when Plaintiff's actual argument was that "Notably, TTI fails to cite a single case in which a court granted a protective order over a plaintiff's objection in response to a *DMCA subpoena*." (emphasis added) *Id.* at 6.

These misrepresentations reflect TTI's inability to engage with Plaintiff's actual arguments, instead resorting to creating and attacking positions Plaintiff never took.

**2. TTI Fails to Distinguish Between DMCA Subpoenas and Civil Lawsuits**

TTI's supplemental memorandum demonstrates a fundamental failure to distinguish between DMCA subpoenas issued under 17 U.S.C. § 512(h) and ordinary civil lawsuits that might include DMCA claims. This distinction is legally significant because DMCA subpoenas operate under a specific statutory framework that includes built-in protections through a required sworn declaration "that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title." 17 U.S.C. § 512(h)(2)(C).

TTI's citation of eight different Strike 3 Holdings cases—none of which involve DMCA subpoenas—fails to provide any precedent for imposing a protective order over a plaintiff's objection in a DMCA subpoena case. By contrast, *Baugher v. GoDaddy.com LLC* directly addressed the need for additional protections beyond the DMCA statute, concluding that "The Does' fears that that disclosure of their identities will be misused is addressed both by the DMCA itself, which states the identities will only be used for the limited purpose of protecting the applicant's copyright, 17 U.S.C. § 512(h)(2)(C), and Baugher's attestation to the same." 2021 WL 4942658, at *5 (D. Ariz. Oct. 22, 2021).

TTI's failure to cite a single **DMCA subpoena case** supporting its position is telling, especially given that cases like *In re DMCA Subpoena to eBay and Cognosphere*

---

[4] *Id.* at 6

3

PLAINTIFF'S SUPPLEMENTAL MEMO OF LAW IN OPPOSITION TO TTI'S MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:25−mc−00002 HDV (PDx)

*v. X Corp.* enforced DMCA subpoenas without imposing protective orders. 2024 WL 4227594, at *9 (N.D. Cal. Sept. 18, 2024).

**3. TTI's Contradictory Position on User Notification Undermines Its Argument**

TTI's claim that account owners are "unknown individuals with no ability to object"[5] directly contradicts TTI's own published policies. TTI's Law Enforcement Guidelines explicitly state: "It is our policy to notify TikTok users before disclosing their data..." Dkt. 7-1 at 17.

This contradiction creates an insurmountable logical problem for TTI:

- If TTI notifies users as their policy states, then these users are not "unknown" and do have the ability to object before their information is disclosed.
- If TTI does not notify users despite their published policy, then TTI is either selectively applying its notification policy or making inconsistent representations to different audiences.

TTI cannot credibly claim users are unreachable when its own policies and authentication systems prove otherwise. Moreover, TTI's position ignores the fundamental difference between Section 512(a) ISPs (where misidentification through IP addresses is possible) and Section 512(c) platforms like TikTok that require authentication through username, password, and two-factor verification, virtually eliminating misidentification concerns that troubled courts in TTI's cited cases.

**4. TTI's Proposed Protective Order Is Unduly Burdensome**

TTI dismisses Plaintiff's burden arguments as "unfounded"[6] while failing to substantively address the specific filing burdens detailed in Plaintiff's opposition. Filing under seal is extremely cumbersome for a *pro se* litigant, requiring: "(1) an application to file under seal, (2) a declaration in support of the application, (3) a proposed order, (4) a

---

[5] *Id.* at 2; Dkt. 7-1 at 2-3
[6] Dkt. 15 at 6.

4

PLAINTIFF'S SUPPLEMENTAL MEMO OF LAW IN OPPOSITION TO TTI'S MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:25−mc−00002 HDV (PDx)

redacted version of the document to be filed, (5) an unredacted version of the document to be filed, and (6) a proof of service." *Id.* at 20-21.

TTI's assertion that "no party has reported difficulty enforcing their rights"[7] under their protective orders ignores the specific objections raised in this case. TTI's argument essentially boils down to "others have complied before, so you should too"—a position that ignores the individualized analysis required for good cause under Rule 26(c)(1).

Furthermore, TTI's proposed 14-page protective order is fundamentally different from the narrow, single-page protective orders sometimes issued in the cases they cite, which were designed to restrict BSI disclosure only during a temporary user notification period. TTI's comprehensive order contains provisions for confidentiality designations, deposition procedures, filing under seal requirements, and permanent post-litigation restrictions that go far beyond the narrow protections ordered in most cases.

## 5. TTI's Citation of Mintz Is Inapposite

TTI's continued reliance on Mintz v. Mark Bartelstein & Associates is misplaced because Mintz involved Call Detail Records rather than Basic Subscriber Information. The court in Mintz addressed a subpoena for highly detailed telecommunications data including "date, time, originating and receiving telephone number, originating cell site and sector and duration" of calls and text messages-information the court deemed sensitive enough to warrant special handling, including in-camera review. *Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 992, 999 (C.D. Cal. 2012)

The comprehensive call records at issue in Mintz are fundamentally different from the basic identification information sought through this DMCA subpoena. TTI's attempt to equate these disparate situations overlooks the material differences in the nature of the information sought and the underlying privacy interests at stake.

---

[7] *Id.*

5

PLAINTIFF'S SUPPLEMENTAL MEMO OF LAW IN OPPOSITION TO TTI'S MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:25−mc−00002 HDV (PDx)

### 6. TTI's Last-Minute Filing Exemplifies Procedural Gamesmanship Against a *Pro Se* Litigant

TTI's supplemental memorandum, filed on May 8, 2025—just hours before the reply deadline—exemplifies a form of procedural gamesmanship that raises serious concerns about fairness when directed at a *pro se* litigant. While such tactical timing might be considered routine between well-resourced law firms, it creates a fundamentally uneven playing field when employed against a self-represented party facing multinational law firms with over 1,200 attorneys.[8]

Faegre Drinker's institutional capabilities-including teams of associates, paralegals, and 24-hour support staff-allow it to prepare comprehensive submissions even under tight deadlines. By contrast, *a pro se* litigant must independently analyze complex legal arguments, research relevant precedent, and prepare a coherent response without comparable resources or legal training.

The Court has discretion to consider the impact of such gamesmanship when evaluating the merits of the parties' positions. At minimum, the Court should view TTI's arguments with appropriate skepticism, recognizing that the *pro se* plaintiff has been deliberately placed at a procedural disadvantage through no fault of his own.

**CONCLUSION**

TTI has failed to establish good cause for a protective order as required by Rule 26(c)(1). Its supplemental memorandum relies on mischaracterizations of Plaintiff's arguments, inapposite case law, and contradictory positions regarding user notification. TTI's proposed protective order would impose unnecessary burdens on Plaintiff without addressing legitimate privacy concerns beyond those already protected by the DMCA's statutory framework. For these reasons, the Court should deny TTI's request for entry of a protective order and order TTI to comply with the DMCA subpoena without delay.

---

[8] https://www.faegredrinker.com/en/about (last visited May 8, 2025)

6

PLAINTIFF'S SUPPLEMENTAL MEMO OF LAW IN OPPOSITION TO TTI'S MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:25−mc−00002 HDV (PDx)

Dated: May 8, 2025

                                             /s/ Nima Gharavi

                                             Nima Gharavi

                                             Plaintiff *Pro Se*

7

PLAINTIFF'S SUPPLEMENTAL MEMO OF LAW IN OPPOSITION TO TTI'S MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:25−mc−00002 HDV (PDx)

**CERTIFICATE OF SERVICE**

The undersigned, appearing *pro se* as Plaintiff, certifies the foregoing document was filed on the Court's CM/ECF system, which provided notice to all parties.

Dated: May 8, 2025

                                                  /s/ Nima Gharavi

                                                  Nima Gharavi

                                                  Plaintiff *Pro Se*

8

PLAINTIFF'S SUPPLEMENTAL MEMO OF LAW IN OPPOSITION TO TTI'S MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:25−mc−00002 HDV (PDx)